1  ARTHUR A. HARTINGER (SBN 121521)
   ahartinger@publiclawgroup.com
2  RYAN MCGINLEY-STEMPEL (SBN 296182)
   rmcginley-stempel@publiclawgroup.com
3  ANASTASIA BONDARCHUK (SBN 309091)
   abondarchuk@publiclawgroup.com
4  RENNE PUBLIC LAW GROUP
   350 Sansome Street, Suite 300
5  San Francisco, California 94104
   Telephone:  (415) 848-7200
6  Facsimile:  (415) 848-7230

7  Attorneys for Defendant
   BOARD OF TRUSTEES OF
8  THE CALIFORNIA STATE UNIVERSITY

9

10                  IN THE UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

| 13  JOHN DOE, an individual, | Case No. |
| 14 | |
| 15        Plaintiff, | **DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a)** |
| 16  v. | **(FEDERAL QUESTION)** |
| 17  CALIFORNIA STATE UNIVERSITY, a | |
| 18  public university system and DOES 1 to 20 inclusive, | |
| 19 | Complaint Filed:  July 12, 2021 |
| 20        Defendants. | |

21

22  TO:  THE CLERK OF THE ABOVE-ENTITLED COURT:

23  TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24         PLEASE TAKE NOTICE that Defendant Board of Trustees of the California State

25  University (erroneously sued as "California State University" and referred to herein as

26  "Defendant") hereby removes the state court action described below to the United States

27  District Court for the Central District of California.

28

RENNE PUBLIC LAW GROUP
Attorneys at Law

## THE STATE COURT ACTION

1.     On July 12, 2021, an action was commenced in the Superior Court of the State of California, in and for the County of Los Angeles, entitled *John Doe v. California State University*, Los Angeles County Superior Court Case No. 21STCV25518.  A true and correct copy of the Complaint for Damages (the "Complaint") is attached hereto as Exhibit A.

2.     The first date upon which Defendant received a copy of said Complaint was July 22, 2021, when Defendant was served with a copy of said Complaint and a Summons from Los Angeles County Superior Court.  A true and correct copy of the Summons is attached hereto as Exhibit B.

3.     Defendant filed an Answer to the Complaint on or around August 19, 2021. A true and correct copy of said Answer is attached hereto as Exhibit C.

4.     A true and correct copy of the remaining materials in the Superior Court file are attached hereto as Exhibit D.  These include:  (a) Civil Case Cover Sheet and Addendum; (b) Notice of Case Assignment filed July 12, 2021; (c) Notice of Case Management Conference filed on July 21, 2021; (d) Proof of Service by Substituted Service filed on July 27, 2021 showing service of the Summons on July 22, 2021; and (e) Plaintiff's Consent to Electronic Service and Notice of Electronic Service Address filed August 18, 2021.

## TIMELINESS OF REMOVAL

5.     Defendant received a copy of the Complaint and Summons on July 22, 2021. (See Exhibit D, Proof of Service of Summons.)  This Notice of Removal is timely under 28 U.S.C. § 1446(b), because it is filed within 30 days after service of the Summons and Complaint on the Defendant.

## JURISDICTION

6.     Plaintiff's Complaint alleges a cause of action for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  Therefore, this action is a civil action "arising under the Constitution, laws, or treaties of the United States" of which this Court

RENNE PUBLIC LAW GROUP
Attorneys at Law

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(A) (FEDERAL QUESTION)          Case No.

has original jurisdiction under 28 U.S.C. § 1331.  *See Karasek v. Regents of University of California*, 956 F.3d 1093, 1104 (9th Cir. 2020) (explaining that the "district court had jurisdiction under 28 U.S.C. § 1331" over Title IX action removed from state court). Accordingly, this action is removable under 28 U.S.C. § 1441(a).

7.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's remaining state law claims for relief because they are part of the same "case or controversy" as Plaintiff's federal law claim.

### VENUE

8.     The United States District Court for the Central District of California embraces the place where the state court action is now pending (Los Angeles County). Accordingly, removal to this district is proper pursuant to 28 U.S.C. §1441(a), which provides that it "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

### NOTICE TO STATE COURT AND PLAINTIFF

9.     Defendant is filing written notice of this removal with the clerk of the state court in which the action is currently pending, pursuant to 28 U.S.C. § 1446(d).  Copies of this Notice of Removal and the notice to the state court of this removal are being served upon Plaintiff, pursuant to 28 U.S.C. § 1446(d).

### NO RELATED CASES PENDING

10.     To the best of Defendant's knowledge, there are no cases presently pending in this Court that relate to the action that is the subject of this Notice of Removal.

WHEREFORE, Defendant Board of Trustees of the California State University hereby removes to this Court the action now pending against it in Los Angeles County Superior Court, Case No. 21STCV25518.

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(A)
(FEDERAL QUESTION)                                          Case No.

RENNE PUBLIC LAW GROUP
Attorneys at Law

Dated:  August 20, 2021

RENNE PUBLIC LAW GROUP

By:_____

RYAN P. MCGINLEY-STEMPEL

Attorneys for Defendant
BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITY

RENNE PUBLIC LAW GROUP
Attorneys at Law

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(A)
(FEDERAL QUESTION)                                    Case No.

# EXHIBIT A

1  MARK M. HATHAWAY
2  (CA 151332; DC 437335; IL 6327924; NY 2431682)
   JENNA E. PARKER (CA 303560)
3  HATHAWAY PARKER
   445 S. Figueroa St. 31st Fl
4  Los Angeles, California 90071
5  Telephone: (213) 529-9000
   Facsimile: (213) 529-0783
6  E-Mail: mark@hathawayparker.com
   E-Mail: jenna@hathawayparker.com
7
8  Attorneys for Plaintiff John Doe

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11
                                        )Case No.:   21STCV25518
12                                      )
   JOHN DOE, an individual,            )
13                                      )**COMPLAINT FOR DAMAGES**
        Plaintiff,                      )
14                                      )  1)  BREACH OF CONTRACT AND
   v.                                   )      COVENANT OF GOOD FAITH
15                                      )      AND FAIR DEALING
   CALIFORNIA STATE UNIVERSITY, a public )  2)  PROMISSORY ESTOPPEL
16 university system and DOES 1 to 20 inclusive, )  3)  TITLE IX
                                        )  4)  VIOLATION OF CALIFORNIA
17      Defendants.                     )      CIVIL CODE, § 51
                                        )  5)  NEGLIGENCE
18                                      )
                                        )  JURY DEMAND
19 ─────────────────────────────────────)

20
      COMES NOW PLAINTIFF John Doe ("Plaintiff" or "Doe"), by and through his attorneys
21
   Hathaway Parker Inc., as and for his Complaint, respectfully alleges as follows:
22

23                          **NATURE OF THIS ACTION**

24      1.  Plaintiff John Doe, an undergraduate student at California State University Sacramento

25 ("CSUS") was improperly disciplined and ordered expelled in June 2018 following a Title IX sexual

26 misconduct disciplinary process that was unfair, lacked due process, did not comply with the law or

27 university policy, and where the charges were not supported by the evidence.

28      2.  Therefore, John Doe filed a Petition for Writ of Mandate. While in the midst of those

─────────────────────────────────────
                      COMPLAINT FOR DAMAGES
                                1

proceedings, Defendants, the Trustees of the California State University (CSU), voluntarily set aside the findings against Doe and remanded the Title IX complaint against Doe for adjudication by CSUS. As a result, in April 2020, CSUS found Doe not responsible for sexual misconduct.

3.   John Doe brings this Complaint as he has been subject to discrimination as result of his gender/sex, violations of his right to due process, intentional infliction of emotional distress, and breach of contract by Defendants.  Petitioner brings this action not only for his own interest, but to protect the rights of other individuals and students who have been subjected to wrongful and unfair disciplinary proceedings at California State University, CSUS, and other institutions of higher learning. Plaintiff alleges further:

### THE PARTIES

4.   Plaintiff JOHN DOE was, at all times relevant, an undergraduate student at California State University, Sacramento.

5.   Defendant THE CALIFORNIA STATE UNIVERSITY ("Cal State" or "CSU"), is a public university system of the State of California that operates some 23 university campuses and eight off-campus centers enrolling some 485,550 students with 56,000 staff and faculty.  CSU is the largest four-year public university system in the United States and is one of three public higher education systems in California, with the other two being the University of California system and the California Community Colleges System.  The CSU system is operated and governs through its 25-member board of trustees and is headquartered in Long Beach, California.

6.   Non-party JANE ROE at all times relevant was an undergraduate student at California State University, Sacramento.

7.   Plaintiff uses the pseudonym of John Doe in his petition to preserve privacy in a matter involving student discipline and records protected under the Family Educational Rights and Privacy Act (FERPA) and a matter of sensitive and highly personal nature, which outweighs the public's interest in knowing the parties' identity. Use of the pseudonyms does not prejudice Respondents because the identity of Petitioner is known to Respondents. (See, FERPA, 20 U.S.C. § 1232g; 34 CFR Part 99; *Starbucks Corp. v. Superior Court* (2008) 68 Cal.App.4th 1436 ["The judicial use of 'Doe plaintiffs' to protect legitimate privacy rights has gained wide currency, particularly given the rapidity and ubiquity of disclosures over

the World Wide Web"]; see also *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531; *Johnson v. Superior Court* (2008) 80 Cal.App.4th 1050; *Roe v. Wade* (1973) 410 U.S. 113; *Doe v. Bolton* (1973) 410 U.S. 179; *Poe v. Ullman* (1961) 367 U.S. 497; *In Does I thru XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058.)

## JURISDICTION AND VENUE

8.   This Court has personal jurisdiction over Defendants because Defendants are located in California and because the transactions described in this Complaint took place in California.

9.   Venue is proper in the Los Angeles Superior Court because the Defendant California State University is located in the County of Los Angeles.  (Code Civ. Proc., § 395.)

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.   SUMMARY OF CSUS'S INVESTIGATION AND ADJUDICATION POLICIES.

10. CSUS implements federal and state law and OCR guidance regarding student-on-student sexual misconduct through a series of Executive Orders issued by Respondent Timothy P. White.

11. As of October 2017, through June 2018, the University had at least six (6) relevant sources of written policies and procedures for the handling of allegations of sexual assault and related offenses:

    a.   Executive Order 1095 (June 23, 2015), regarding Implementation of Title IX, VAWA/Campus SAVE Act, and Related Sex Discrimination, Sexual Harassment and Sexual Violence Legislation (EO 1095 (2015));

    b.   Executive Order 1096 (October 5, 2016), Systemwide Policy Prohibiting Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking against Employees and Third Parties and Systemwide Procedure for Addressing Such Complaints by Employees and Third Parties (EO 1096 (2016);

    c.   Executive Order 1097 (October 5, 2016), the Systemwide Policy Prohibiting Discrimination, Harassment and Retaliation Against Students and Systemwide Procedure for Handling Discrimination, Harassment and Retaliation Complaints by Students (EO 1097 (2106));

    d.   Executive Order 1098 (June 23, 2015), outlining student conduct procedures (EO 1098 (2015));

    e.   Title 5, California Code of Regulations; and

f.   the University's website.[1]

## A.  EXECUTIVE ORDERS 1098 AND 1097.

12. The Student Conduct Procedures pertaining to allegations of sexual misconduct are generally contained in Executive Order 1098 (2015), Article IV.

13. Complaints by Students against Students are to investigated according to the procedures set forth in Executive Order 1097 (2016).

## B.  CALIFORNIA STATE UNIVERSITY TITLE IX INVESTIGATION PROCESS.

14. CSUS does not rely upon sworn law enforcement officers or licensed private investigators to investigate allegations of rape or other serious student-on-student sexual violence and misconduct. However, California's statutory scheme for regulating the conduct and qualifications of investigators requires licensing for "[A] person…who, for any consideration whatsoever. . . engages in business or accepts employment to furnish, or agrees to make, or makes, any investigation for the purpose of obtaining, information with reference to:

> (a) Crime or wrongs done or threatened against the United States of America or any state or territory of the United States of America.

> (b) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation, or character of any person.

> …(e) Securing evidence to be used before any court, board, officer, or investigating committee.

15. "No person shall engage in the business of a private investigator… unless that person has applied for and received a license to engage in that business pursuant to this chapter."  Bus. & Prof. Code § 7523(a).

16. According to the State of California's Bureau of Security and Investigative Services, to be eligible to apply for licensure as a private investigator, applicants must undergo a criminal history background check through the California Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI) and have at least three years (2,000 hours each year, totaling 6,000 hours) of

---

[1] https://www.csus.edu/sexualviolence/

COMPLAINT FOR DAMAGES

4

compensated experience in investigative work, have a law degree or completed a four year course in police science plus two years (4,000 hours) of experience; or have an associate's degree in police science, criminal law, or justice and 2 ½ years (5,000 hours) of experience.  Applicants are also required to pass a two-hour multiple-choice examination covering laws and regulations, terminology, civil and criminal liability, evidence handling, undercover investigations and surveillance.[2]

17. CSUS placed the entire responsibility for the investigation, prosecution, fact-finding, and adjudication in the hands of non-sworn, non-licensed individuals who act as police, prosecutor, and judge without a hearing.

18. This dual or triple role of a single person investigating complaints and presenting or prosecuting the case on behalf of the University and also adjudicating responsibility or guilt, creates a potential conflict that can deprive complainants and respondents of an adequate, reliable, and impartial investigation. Such arrangements have been discouraged by the U.S. Department of Education, Office for Civil Rights and the U.S. Department of Justice Civil Rights Division.  Colleges and university are to ensure that individuals who play a role in receiving, investigating, and processing student complaints of sex-based harassment do not have any actual or perceived conflicts of interest in the process.  (See, *University of Montana*, DOJ Case No. DJ 169-44-9, OCR Case No. 10126001, May 9, 2013.)

19. CSUS asserts, however, that it is committed to the well-being and rights of person reporting the assault, while ensuring due process for the accused.

20. Under Executive Order 1098, Article IV, the Title IX Coordinator (or designee) is responsible for investigating complaints of sexual misconduct.

21. In accordance with EO 1097 (2016), the Title IX Coordinator investigates Complaints, determines whether a Student violated the Student Conduct Code, and prepares a report that includes findings of facts and conclusions about whether the Student violated the Student Conduct Code.

22. All investigations and reviews are to be conducted impartially and in good faith.

23. The Complainant and the Respondent shall have equal opportunities to present relevant witnesses and evidence in connection with the investigation.

---

[2] http://www.bsis.ca.gov/forms_pubs/pi_fact.shtml

24. Before reaching a final conclusion or issuing a final investigation report, the Investigator shall have: a) advised the Parties, or have offered to do so, verbally or in writing, of any evidence upon which the findings will be based; and, b) given the Parties an opportunity to respond to the evidence, including presenting further relevant evidence, information or arguments that could affect the outcome.

25. The Investigator will not reach a final conclusion or issue an investigation report until giving careful consideration to any such relevant evidence, information or arguments provided by the Parties. The Investigator retains discretion and authority to determine relevance.

26. Both the Complainant and Respondent shall have the right to identify witnesses and other evidence for consideration; however, the investigator shall decide what evidence is relevant and significant to the issues raised.

27. Within the investigation period stated above, the investigator shall prepare an investigation report. The report shall include a summary of the allegations, the investigation process, the Preponderance of the Evidence standard, a detailed description of the evidence considered, and appropriate findings. Relevant exhibits and documents, if any, shall be attached to the written report. The report shall be promptly provided to the DHR [("Discrimination, Harassment, and Retaliation")] Administrator or Title IX Coordinator, if applicable. The DHR Administrator or Title IX Coordinator shall review the investigation report to assure compliance with this Executive Order before proceeding further.

28. The Chancellors executive orders have no specific provision for the presumption of innocence of the accused student, however, federal law, state law, and OCR guidance require the University to accord students due process,[3] which means that the University must have in place procedures that protect the due process rights of all parties and that the University bears the burden to produce "reliable, probative and substantial evidence" that the accused student, who must be presumed innocent, is responsible for the alleged violation, based on the weight or preponderance of the substantial evidence.

29. Within 10 Working Days of issuance of the final investigation report, the DHR Administrator or Title IX Coordinator shall notify the Complainant and Respondent in writing of the outcome of the

[3] 2001 Guidance at p. 22.

investigation. The notice shall include a summary of the allegations, the investigative process, the Preponderance of the Evidence standard, the evidence considered, the findings of fact, a determination as to whether this Executive Order was violated, and if so, any Remedies to be afforded to the Complainant (such as an order that the Accused not contact the Complainant).

30. The notice shall advise the Complainant and Respondent of their right to file an appeal of the findings and to request a copy of the final investigation report with exhibits/attachments, if any, redacted as appropriate.

### C. APPEAL OF THE INVESTIGATORS OPINIONS.

31. A student may appeal the findings of the Title IX Coordinator.  Instructions for appealing determinations made by the Title IX Coordinator are contained in EO 1097 (2016).

32. EO 1097 (2016), Article IV provides, "Any Complainant or Respondent who is not satisfied with a Campus investigation outcome may file an appeal with the CO [Office of the Chancellor] no later than 10 Working Days after the date of the Notice of Investigation Outcome."

33. The appeal must be in writing and must be based on one or more of the following limited appeal grounds: (1) The investigation outcome is unsupported by the evidence, based on the Preponderance of the Evidence standard; (2) Prejudicial procedural errors impacted the investigation outcome to such a degree that the investigation did not comply with this Executive Order; or (3) New evidence not available at the time of the investigation.

34. The issues and evidence raised on appeal shall be limited to those raised and identified during the investigation, unless new evidence becomes available after the Campus investigation process and is made part of the appeal by the appealing party.

35. The CO may conduct an interview, at the CO's discretion, with the appealing party to clarify the written appeal.

36. The CO review will not involve a new investigation by the CO and will not consider evidence that was not introduced during the Campus investigation, unless the new evidence was not available at the time of the Campus investigation process.

37. If the CO review determines the investigation should be reopened to cure any defects in the investigation and/or consider new evidence introduced for the first time on appeal (that could have

affected the investigation determination), the investigation will be remanded back to the Campus and the investigation reopened at the Campus level.

38. If an appeal is filed, the investigative findings do not become final until the appeal has been exhausted.

39. The findings and conclusions of investigations conducted in accordance with EO 1097 (2016), once any appeals are exhausted, are final and binding.

40. Unless the Chancellor's Office notifies the Campus that an appeal has been filed, investigative findings become final 11 working days after the date of the Notice of Investigation Outcome.

**D. CONFERENCE WITH THE STUDENT CHARGED.**

41. Within 10 Working Days after the Student Conduct Administrator receives the final investigation report – or, if an appeal was filed, the final appeal outcome – and after the Complainant has been given 10 Working Days to have a Conference with the Student Conduct Administrator, the Student Conduct Administrator shall notify the Student charged in writing that a conference has been scheduled or that the Student is directed to promptly schedule a conference with the Student Conduct Administrator.

42. The conference requirement is waived if the Student or Complainant(s) fails to attend the conference or otherwise declines to cooperate.

**E. HEARING ON SANCTIONS.**

43. If the matter is not resolved at the conference, the Student Conduct Administrator shall issue a Notice of Hearing promptly after the conference. Simultaneous notice shall also be provided to the Complainant and the Title IX Coordinator. The Notice of Hearing shall be issued within 5 Working Days after the conference has concluded.

44. The hearing is limited to determining appropriate sanctions; the findings of the investigation are not under review.

45. The Student Conduct Administrator shall schedule the hearing promptly, but in any event no sooner than 10 Working Days after, and no later than 20 Working Days after, the date of the Notice of Hearing.

46. The Hearing Officer controls the hearing. The Student Conduct Administrator and the Student charged each put on the evidence in their case and may each ask questions of the witnesses in whatever

1   manner the Hearing Officer deems appropriate.

2      47. The Hearing Officer shall make an official audio recording of the hearing (with assistance, at the

3   Hearing Officer's discretion). The recording is University Property. No other recording of the hearing is

4   permitted. The audio recording shall be retained by the Student Conduct Administrator in accordance

5   with the Campus records/information retention and disposition schedule.

6      48. The Hearing Officer shall submit a written report to the president recommending sanctions, if

7   any, as well as any recommendations regarding additional remedies, including but not limited to

8   restricting the Student's contact with, or physical proximity to, the Complainant or other persons. The

9   report shall include any mitigating or aggravating factors relied upon by the Hearing Officer in reaching

10   the recommendations. The report shall be submitted within 10 working days after the hearing.

11      49. The Hearing Officer's report shall be based only on the investigative report and the information

12   received at the hearing. The Hearing Officer shall not, prior to preparing the report, have substantive

13   communications about the facts of the case with the Student Conduct Administrator, the Complainant,

14   the Student, the witnesses, or the Title IX Coordinator, unless both the Student Conduct Administrator

15   and the Student are present.

16      **F.  PRESIDENT'S SANCTION DECISION.**

17      50. The president shall review the investigative report and the Hearing Officer's report and issue a

18   decision concerning the appropriate sanction.  The president may impose the recommended sanctions,

19   adopt a different sanction or sanctions, or reject sanctions altogether.

20      51. Unless the CO notifies the campus that an appeal has been filed, the president's sanction decision

21   becomes final 11 Working Days after the date of the decision letter.

22      **G.  APPEAL OF SANCTIONS.**

23      52. The Complainant and Student charged each may file an appeal of the president's decision of

24   appropriate sanctions to the Chancellor's Office no later than 10 Working Days after the date of the

25   president's decision letter.

26      53. The Complainant may also appeal any proposed sanctions agreed to as part of a proposed

27   resolution agreement with the Student charged either in the conference procedure described above or at

28   any time thereafter. Such an appeal must be filed within 10 Working Days after the date of notice to the

1    Complainant of the proposed resolution agreement.

2        54. The CO shall issue a final appeal response to the parties, the DHR Administrator or Title IX

3    Coordinator, and the campus president (or designee) no later than 10 Working Days after receipt of the

4    written appeal unless the timeline has been extended.

5        55. The CO Appeal Response shall include a summary of the issues raised on appeal, a summary of

6    the evidence considered, the determination(s) reached regarding the issues identified within the written

7    appeal, a decision about whether the president's sanction decision is reasonable, and, where applicable, a

8    decision regarding the final sanction.

9        56. Administrative remedies are exhausted once the CO renders a decision regarding a respondent's

10   appeal of the sanctions.

11   **II. ALLEGATIONS MADE BY JOHN DOE AND JANE ROE.**

12       **A. CSUS'S PROCEEDINGS AGAINST DOE.**

13              ***1. Doe and Roe Have Sex In Doe's Dorm Room.***

14       57. Plaintiff, John Doe, and the complainant in the underlying administrative proceeding, Jane Roe,

15   were both first-year students at CSUS in the Fall of 2017.

16       58. On October 5, 2017, Jane Roe, John Doe, Doe's roommate, and the roommate's girlfriend went

17   to a party at the Sigma Phi Epsilon fraternity.  Doe's roommate became intoxicated and belligerent and

18   had to be taken back to his dormitory by his girlfriend and Jane Roe, while Doe stayed at the fraternity.

19   After putting Doe's roommate to bed, the roommate's girlfriend left, and Jane Roe decided to sleep in

20   Doe's bed, reasoning, "I did all this for his best friend, and he's not here; so I'm just going to sleep in

21   his bed."

22       59. Doe returned to his dormitory shortly thereafter and found Roe in his bed, so he made a bed for

23   himself on the floor.

24       60. Roe told Doe, "It's your bed. You don't have to sleep on the floor," and Roe insisted that Doe

25   get into the bed with her.  When Doe got into the bed, Roe "rolled toward him," and he asked her if she

26   wanted to have sex.  She said, "Yes," and they had sex and then fell asleep.

27       61. The following day, however, Roe claimed to other students that the night before she "woke up to

28   find [Doe] on top of her having vaginal intercourse with her."  Roe maintained that she was not

1  incapacitated by alcohol but was asleep until she woke up to Doe already having sexual intercourse with

2  her on her back.  Roe claimed she was "was in shock" but did not say anything as the sexual intercourse

3  continued, and at some point, she said she simply fell asleep again.

4      62. Roe continued to spend time at Doe's fraternity where she knew Doe would be present after the

5  sexual activity.  When Doe learned that Roe did not believe their sexual encounter had been consensual,

6  he discussed the encounter with his fraternity president and attempted to have a mediated discussion

7  with Roe.  The fraternity president informed the fraternity's Chapter Counselor of the report made by

8  Doe, and the Chapter Counselor reported the incident to CSUS's Title IX office.

9          ***2. CSUS Investigates Under EO 1097R and Expels Doe.***

10     63. On October 20, 2017, attorney Alison Nygard (SBN 276034), Investigator and Deputy Title IX

11  Coordinator in CSUS's Office for Equal Opportunity and Diversity, advised Doe of a report of sexual

12  misconduct and sexual harassment identifying Doe as the respondent.  Nygard informed Doe that she

13  would investigate the allegations pursuant to EO 1097R.  Doe was suspended from his fraternity

14  pending the outcome of the investigation.

15     64. During the investigation, Alison Nygard interviewed Jane Roe, Doe's roommate, Doe's

16  roommate's girlfriend, and the fraternity president.  Doe attended an investigation interview but declined

17  to make a statement on the advice of his attorney advisor, given the serious criminal allegations leveled

18  by Jane Roe and Roe's filing of a police report against Doe with the Sacramento Police Department.

19     65. On February 15, 2018, Alison Nygard found that Doe violated EO 1097R for Sexual Misconduct

20  and Sexual Harassment and the Student Conduct Code § 41301(b)(16), which prohibits any student from

21  violating "any published University policy, rule, regulation, or presidential order."

22     66. On March 1, 2018, Doe appealed the findings.

23     67. On April 2, 2018, Doe's Appeal was denied.

24     68. On May 4, 2018, a hearing was held to determine the sanctions against Doe, with the

25  "recommended sanction" being expulsion from CSU.  The Hearing Officer upheld the recommended

26  sanction of expulsion.

27     69. On May 23, 2018, the President's designee approved the sanction of expulsion.

28     70. On May 24, 2018, the District Attorney's Office declined to pursue charges against Doe based

COMPLAINT FOR DAMAGES

11

1 | on a lack of sufficient evidence.

2 | 71. On June 7, 2018, Doe submitted an appeal of the sanctions.

3 | 72. On June 20, 2018, Doe's appeal of the sanction was denied, and Doe exhausted his
4 | administrative remedies.

5 | ### 3. Doe Petitions For Writ Of Mandamus.

6 | 73. On August 29, 2018, Doe filed a Petition for Writ of Mandamus to redress the improper
7 | administrative action. (*Doe v. White et al.*, Los Angeles Superior Court, Case No. BS174934.)

8 | 74. On September 26, 2018, CSU filed its Answer to Petition for Writ of Mandamus, praying for the
9 | Court to deny the Petition for Writ of Mandate, including the request for an order declaring CSU's
10 | policy unenforceable, and for the Petition to be dismissed.

11 | ### 4. CSU Re-Opens Investigation and Finds Doe Not Responsible.

12 | 75. On December 10, 2018, in response to "new legal developments," CSU's Vice President for
13 | Student Affairs, Edward E. Mills, and Director of Equal Opportunity, attorney William "Skip" Bishop
14 | (SBN 232251), unilaterally re-opened the investigation into Jane Roe's complaint for "further
15 | processing" and to "ensure a fair investigatory process."

16 | 76. The proposed investigation would allow each party to submit questions for the investigator to ask
17 | the other party during the investigation. Doe was given just five business days to submit a proposed list
18 | of questions to the investigator. Doe was also told that the investigator could choose not to ask Doe's
19 | questions or rephrase the questions Doe submitted. No record would exist of the questions asked and
20 | the answers as the interviews are not recorded in any manner. The investigator would then "take the
21 | additional information obtained from both parties during the question submittal process and prepare a
22 | revised 'Summary of Evidence' before making any findings." The investigator would then make
23 | findings without a hearing.

24 | 77. On January 14, 2019, Doe was informed by William "Skip" Bishop that the process would be
25 | further delayed due to another court decision, which "will likely change the procedures that the CSU
26 | must use to reach a finding in this matter."

27 | 78. Doe received no further communication until August 7, 2019, when he was informed by William
28 | "Skip" Bishop, "The re-opened investigation concerning the above-referenced complaint has

1    concluded," and, "This matter will now proceed to a hearing."

2        79. No additional investigation was actually performed.

3        80. On August 9, 2019, William "Skip" Bishop emailed Doe, "The investigation concerning the

4    above-referenced complaint has concluded. You now have the opportunity to meet with me to discuss

5    the hearing process." Only then was Doe provided a copy of the March 1, 2019 EO 1097 and the Final

6    Investigation Report and Exhibits. New exhibits included the results from the hearing conducted on

7    May 4, 2018 deciding that Doe should be expelled, and the CSU Chancellor's Office's June 20, 2018

8    Appeal Response, rejecting Doe's appeal of the expulsion sanctions. By including these documents in

9    the "new" investigation report, CSUS was improperly signaling to the hearing officer that Doe should be

10   found responsible for sexual misconduct.

11       81. A hearing was held on April 3, 2020.

12       82. On April 20, 2020, Doe was found not responsible for sexual misconduct.

13       83. On May 8, 2020, Jane Roe appealed the hearing officer's decision.

14       84. On June 17, 2020, CSU's Chancellor's Office denied Jane Roe's appeal.

15       85. On September 4, 2020, Doe filed a claim against CSUS and Timothy P. White based on CSU's

16   improper Title IX process.

17       86. On January 12, 2021, Defendant rejected Petitioner's claim.

18       87. Doe has exhausted all administrative remedies and avenues for relief prior to bringing this

19   litigation.

20

21                              **FIRST CAUSE OF ACTION**
                                **Breach of Contract**
22                                **(Defendant CSU)**

23       88. Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

24       89. It is well established that the basic relationship between a student and a university is contractual

25   in nature. *Kashmiri v. Regents of Univ. of California,* 156 Cal. App. 4th 809 (2007), *as modified* (Nov.

26   15, 2007), *as modified* (Nov. 28, 2007). "[B]y the act of matriculation, together with payment of

27   required fees, a contract between the student and the institution is created...." *Id. (internal citations*

28   *omitted).*

90. Although "[c]ourts have applied contract law flexibly to actions involving academic and disciplinary **decisions** … [c]ourts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service." *Id.* at 825 (emphasis added).

91. CSUS's investigative process is controlled by written policies and procedures as set forth above.

92. At all times relevant hereto, a contractual relationship existed between CSUS and Plaintiff through CSUS's policies and procedures governing the student disciplinary system.

93. Through the documents they publish and provide to their students, CSUS and CSU make express contractual commitments to students involved in the disciplinary process.

94. Specifically, through EO 1097, Defendant CSU promised that it did not tolerate discrimination "because of any Protected Status: i.e., age, Disability (physical and mental), Gender (or sex), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color or ancestry), Religion (or Religious Creed), Sexual Orientation, sex stereotype, and Veteran or Military Status."

95. CSUS's Title IX Coordinator must coordinate compliance with Title IX; VAWA/Campus SaVE Act; and other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender or sex, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking. (See Executive Order 1095 Revised).

96. EO 1097 also sets forth Defendant CSU promise that the "investigation shall be completed no later than 60 Working Days after the intake interview, unless the timeline has been extended pursuant to Article V.E. The timeline should not extend for a period longer than an additional 30 working days from the original due date."

97. EO 1097 and the other policies set forth above are/were available for review by students and/or potential students on CSUS's website.

98. CSUS further created an implied promise to its potential students and students, including Plaintiff, that so long as a student abides by CSUS's policies and procedures, completes all necessary degree requirements, and attains satisfactory grades, the student will graduate on his/her expected graduation date. CSUS has specific degree requirements listed on the website for each academic

1 | program, which is accessible to students and prospective students.

2 | 99. CSUS further created an implied promise to its potential students and students, that they would
3 | be treated fairly in all disciplinary and administrative proceedings.

4 | 100.   At all relevant times, Plaintiff was aware of CSUS's policies, procedures, and promises as set
5 | forth above.

6 | 101.   Plaintiff applied to and chose to enroll in CSUS for which all associated tuition, fees, and
7 | expenses were paid in exchange for a commitment to his academic program.

8 | 102.   Plaintiff did so in reliance on his understanding, and with the reasonable expectation that
9 | CSUS would adhere to its stated policies, including its policies related to the adjudication of misconduct
10 | matters as set forth above, and would implement and enforce all of its policies as set forth in its official
11 | publications, including those listed on its website.

12 | 103.   Plaintiff abided by all CSUS policies and procedures, took all necessary courses, and attained
13 | satisfactory grades.

14 | 104.   Plaintiff did so in reliance upon the promise of a degree and diploma upon completion of the
15 | degree requirements for his chosen major.

16 | 105.   Based on the foregoing, CSUS and CSU created express and implied contracts with Plaintiff.

17 | 106.   Plaintiff fulfilled and performed his contractual duties to CSUS under the University's
18 | policies by providing CSUS with required tuition and fees, enrolling in, and attending classes and
19 | completing research and work assignments at all times during when events in this Complaint occurred.
20 | Plaintiff, to the extent permitted by Defendants, participated in the investigation and reviewed evidence,
21 | presented witnesses on his own behalf, supported his own allegation of sexual assault, and showed the
22 | falsity of the allegations against him.

23 | 107.   CSUS breached the terms of its agreement as set forth above when it treated Doe differently
24 | based solely upon his gender.

25 | 108.   CSUS promised Plaintiff that his claim and the claim against him would be conducted by a
26 | neutral/unbiased factfinder. CSUS breached that agreement when it assigned Alison Nygard to
27 | investigate Jane Roe's claims, as she was not a neutral/unbiased factfinder. Alison Nygard improperly
28 | Doe responsible for sexual misconduct when such a finding was not supported by a preponderance of

1  evidence.

2    109.    CSUS breached its agreement with Doe when it accepted Alison Nygard's determination,

3  which was not based upon the preponderance of the evidence.

4    110.    CSUS breached its agreement with Doe when it held a sanctions hearing in which the

5  outcome was pre-determined.

6    111.    CSUS further breached the agreement by imposing on Doe the harshest sanction possible,

7  expulsion from CSU, when the evidence did not support Alison Nygard's findings.

8    112.    Defendant breached its contract with Doe by failing to provide Doe due process before

9  expelling him from CSUS in June 2018.

10    113.    CSUS breached its agreement with Doe when it permitted the investigation into the

11  complaint against him to linger well beyond the 60 business day time limit and the additional 30 day

12  extension.

13    114.    In addition to violating the terms of its own Policies, CSUS violated the covenant of good

14  faith and fair dealing implied in every contract, which implicitly guaranteed that any proceedings would

15  be conducted with due process and fairness.

16    115.    Based on the aforementioned facts and circumstances, Defendants breached express and/or

17  implied agreement(s) with Plaintiff.

18    116.    Defendant CSU committed multiple breaches of its agreements with Plaintiff during the

19  investigation and adjudication process, including, without limitation, discriminating against Plaintiff

20  based upon his gender; holding Plaintiff to a different standard than the female complainant, Jane Roe;

21  manipulating the evidence; expelling Doe despite no showing of any hostile environment on campus;

22  not holding a hearing where the reporting party could be examined; and holding a sanctions hearing in

23  which the outcome was pre-determined.

24    117.    Plaintiff has suffered and continues to suffer the loss of enjoyment of his experience as

25  student as a result of the unreasonable delay and the interference with his right to participate in his

26  educational programs and activities at CSUS.  Plaintiff also suffered as he rejected offers by other

27  universities when he accepted CSUS's offer.

28    118.    CSUS's administrative process affected Doe's right to complete his degree and his

1  fundamental rights under Title IX for access to his education programs and activities.

2  119.    As a direct and foreseeable consequence of the foregoing breaches, Plaintiff sustained

3  damages, including, without limitation, reputational damage, loss of educational and career

4  opportunities, economic injuries, counsel fees, court costs, and other direct and consequential damages.

5  120.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at

6  trial, plus prejudgment interest.

7

8  ## SECOND CAUSE OF ACTION
### Promissory Estoppel
### (Defendant CSU)

9

10  121.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth

11  herein.

12  122.    CSUS and CSU's various policies constitute representations and promises that CSUS should

13  have reasonably expected to induce action or forbearance by Plaintiff.

14  123.    CSUS expected or should have reasonably expected Plaintiff to accept its offer of admission,

15  incur expenses, and choose not to attend other colleges based on its express and implied promises that

16  CSUS would not discriminate against Plaintiff and would not deny him his procedural rights should he

17  be investigated for an alleged violation of the University's policies.

18  124.    Plaintiff relied to his detriment on these express and implied promises and representations

19  made by CSUS.

20  125.    Based on the foregoing, CSUS is liable to Plaintiff based on estoppel.

21  126.    As a direct, reasonable and foreseeable consequence of these breaches, Plaintiff sustained

22  damages, including without limitation, reputational damage, loss of educational and career

23  opportunities, economic injuries, counsel fees, court costs, and other direct and consequential damages.

24  127.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at

25  trial, plus prejudgment interest.

26  ## THIRD CAUSE OF ACTION
### Violation of Title IX
### (Defendant CSU)

27

28  128.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth

1  herein.

2  129.    "Title IX prohibits all discrimination on the basis of sex." *Sheppard v. Visitors of Va. State*

3  *Univ.*, 993 F.3d 230 (4th Cir. 2021).

4  130.    Defendant CSU unlawfully expelled Doe because of his male gender.

5  131.    Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in

6  the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of,

7  or be subjected to discrimination under any education program or activity receiving Federal financial

8  assistance."

9  132.    Title IX of the Education Amendments of 1972 applies to all public and private educational

10  institutions that receive federal funding, which includes Defendant CSU.

11  133.    Both the Department of Education and the Department of Justice have promulgated

12  regulations under Title IX that require a school to "adopt and publish grievance procedures providing for

13  the prompt and equitable resolution of student and employee complaints alleging any action which

14  would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education);

15  28 C.F.R. § 54.135(b) (Dep't of Justice).

16  134.    In 2001, the Office for Civil Rights issued the "Revised Sexual Harassment Guidance:

17  Harassment of Students by School Employees, Other Students, or Third Parties" (the "2001 Guidance")

18  pursuant to the Administrative Procedure Act's notice and comment rulemaking.

19  135.    According to the 2001 Guidance, the procedures adopted by a school covered by Title IX

20  must not only "ensure the Title IX rights of the complainant," but must also "[accord] due process to

21  both parties involved..." (*Id.* at 22.)

22  136.    The "prompt and equitable" procedures that a school must implement include, at a minimum:

23          a.  "Notice . . . of the procedure, including where complaints may be filed";

24          b.  "Application of the procedure to complaints alleging [sexual] harassment...";

25
26          c.  "Adequate, reliable, and impartial investigation of complaints, including the
              opportunity to present witnesses and other evidence";

27
28          d.  "Designated and reasonably prompt timeframes for the major stages of the
              complaint process"; and

e. "Notice to the parties of the outcome of the complaint..." (*Id.* at 20.)

137. A school also has an obligation under Title IX to ensure that all employees involved in the investigation and adjudication process have "adequate training as to what conduct constitutes sexual harassment, which includes 'alleged sexual assaults.'" (*Id.* at 20.) Further, Title IX Coordinators should not have a conflict of interest. "For example, serving as Title IX coordinator and a disciplinary hearing board member may create a conflict of interest." (April 2011 Dear Colleague Letter at 7; August 2015 Dear Colleague Letter at 2-3.)

138. Title IX may be violated by a school's failure to prevent or remedy sexual harassment or sexual assault or by the imposition of university discipline where gender is a motivating factor in the decision to discipline. In either case, the statute is enforceable through an implied private right of action.

139. A plaintiff need only allege facts that raise a plausible inference of discrimination on the basis of sex. *Schwake v. Ariz. Bd. of Regents* 967 F.3d 940, 947 (9th Cir. 2020).

140. Challenges to university disciplinary proceedings for sex discrimination typically fall into two categories: (1) "erroneous outcome" cases, in which the claim is that plaintiff was innocent and wrongly found to have committed an offense and gender bias was a motivating factor behind the erroneous findings; and (2) "selective enforcement" cases, in which the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender.

141. An "erroneous outcome" occurred in Plaintiff's case. Plaintiff was an innocent victim who was wrongly found to have committed a violation of CSU's policies, and gender bias was a motivating factor.

142. To succeed on an erroneous outcome claim, a plaintiff must allege sufficient facts to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and a particularized causal connection between the flawed outcome and gender bias.

143. In other words, the Plaintiff must demonstrate that there was (1) a flawed proceeding that (2) led to an erroneous outcome that was adverse to the plaintiff; and (3) specific circumstances suggesting gender bias led to the erroneous outcome.

144. Plaintiff has sufficiently alleged that the proceeding led to an erroneous outcome that was

1   adverse to Plaintiff as set forth above.

2       145.   Evidence of gender bias can include external pressures, internal pattern and practice, and

3   facts specific to the instant case.

4       **A. EXTERNAL PRESSURES**

5       146.   On April 4, 2011, the Office for Civil Rights ("OCR") of the United States Department of

6   Education issued a guidance letter to colleges and universities in the United States in receipt of federal

7   funding which became widely known as the "Dear Colleague Letter" (the "DCL"). The DCL advised

8   recipients that sexual violence constitutes sexual harassment within the meaning of Title IX of the

9   Education Amendments of 1972, 20 U.S.C. §1681 et seq. and its regulations, and directed schools to

10  "take immediate action to eliminate the harassment, prevent its recurrence and address its effects." DCL

11  at p. 4.

12      147.   The DCL responded, in part, to a special investigative report published by National Public

13  Radio and the Center for Public Integrity, which proclaimed a campus rape epidemic and criticized the

14  OCR for its lax response to what the report characterized as a social problem of critical importance. See

15  http://www.npr.org /templates/story/story.php?storyId=124001493. The report described in detail the

16  obstacles faced by sexual assault victims in obtaining redress though college disciplinary proceedings

17  and how victims who did engage in the college disciplinary process suffered additional trauma as a

18  result. Much of the report focused on underreporting, re-traumatization of victims, rape myth adherence

19  on college campuses, and young men's cultural adherence to the sexual aggressor role.

20      148.   The DCL, further, relied on faulty statistics in sounding a "call to action" for campuses

21  nationwide—that "about 1 in 5 women are victims of completed or attempted sexual assault while in

22  college." DCL, at p. 2. The researchers behind this study subsequently invalidated that statistic as a

23  misrepresentation of the conclusions of the study and warned that it was "inappropriate to use the 1-in-5

24  number as a baseline...when discussing our country's problem with rape and sexual assault."

25  http://time.com/3633903/campus-rape-1-in-5-sexual-assault-setting-record-straight/. Relying on these

26  faulty numbers, the DCL minimized due process protections for the accused by, among other things,

27  eschewing any presumption of innocence, mandating a preponderance of the evidence standard, limiting

28  cross-examination, and forbidding certain forms of alternative dispute resolution.

149.    On April 29, 2014, OCR issued additional directives to colleges and universities in the form of a guidance document titled Questions and Answers on Title IX and Sexual Violence ("Q&A") which was aimed at addressing campus sexual misconduct policies, including the procedures colleges and universities "must" employ "to prevent sexual violence and resolve complaints" and the elements that "should be included in a school's procedures for responding to complaints of sexual violence." (Q&A, at p. 12.) The Q&A advised schools to adopt a trauma informed approach, advising, for example, that hearings should be "conducted in a manner that does not inflict additional trauma on the complainant." (Id. at p. 31.) While the Q&A advised that "the rights established under Title IX must be interpreted consistently with any federally guaranteed due process rights...a school should ensure that any due process rights do not restrict or unnecessarily delay the protections provided by Title IX to the complainant." (Id. at p. 13.)

150.    In April 2014, the White House issued a report entitled "Not Alone", which included a warning that if the OCR finds that a Title IX violation occurred, the "school risks losing federal funds" and that the Department of Justice ("DOJ") shares authority with OCR for enforcing Title IX and may initiate an investigation or compliance review of schools. Further, if a voluntary resolution cannot be reached, the DOJ may initiate litigation.

151.    In June 2014, then Assistant Secretary of Education Catherine Lhamon testified before the United States Senate that if OCR could not secure voluntary compliance with the DCL from a college or university, it may elect to initiate an administrative action to terminate federal funds or refer the case to the Department of Justice. To support enforcement of the DCL the OCR hired hundreds of additional investigators. To date, OCR has resolved 197 investigations of colleges for the potential mishandling of complaints of sexual violence, while 305 cases remain open. (https://projects.chronicle.com/titleix/.)

**B. INTERNAL PATTERN AND PRACTICE OF BIAS**

152.    A pervasive atmosphere of anti-male bias within the Title IX enforcement personnel at CSU has resulted in an unprecedented amount of litigation in which the Superior Court of California has repeatedly held, on numerous occasions, that the University deprived the male respondent of a fair proceeding in adjudicating misconduct allegations.

153.    CSUS does not publish the gender statistics of its Title IX investigations. Upon information

1  and belief, discovery will show that CSUS overwhelmingly finds males to be responsible of violations

2  and females to be not responsible, as is evident from this matter.

3  154.   Upon information and belief, Defendant CSU possesses additional documentation

4  demonstrating its unlawful pattern of gender-biased adjudications and disparate treatment applied to

5  males and females. Such documentation will be brought forth during discovery in this matter.

6  155.   The foregoing combination of internal institutional pressure, ongoing OCR investigations,

7  and pressure from the United States Department of Education, under a threat of recession of federal

8  funds, contributed to an overzealous prosecution and erroneous finding of responsibility against

9  Plaintiff.

10  **C. SPECIFIC INSTANCES OF BIAS IN DOE'S CASE**

11  156.   In addition to the external and internal pressures, gender bias permeated the investigation and

12  appeal hearing.

13  157.   Specific instances of Doe being treated differently because he was a male are set forth more

14  completely hereinabove. In summary, Doe was treated differently than a similarly situated female (Roe)

15  during the Title IX investigation, as follows:

16

17  • Alison Nygard created inaccurate and misleading witness statements and used these to
18    undermine John Doe's relative credibility and find that Jane Roe's statements were more
      credible.

19  • Alison Nygard did not take verbatim notes of witness statements, and only paraphrased
20    what witnesses said during their interviews, then cherry picked summarized phrases, put
      quotation marks around them, and called the quoted material a factual finding in order to
21    justify her conclusions.

22  • Alison Nygard mischaracterized John Doe's timeline of events to demonstrate supposed
      inconsistencies in his statements.
23

24  • Alison Nygard findings are not supported by reliable facts or evidence, and she
      repeatedly contorted evidence to find the accused male student was not credible, and the
25    accused female student credible.

26  • CSUS's Title IX administrators are taught to accept statistics from unknown origin
27    indicating that males perpetrate nearly all sexual assault and gender-based violence and
      that few sexual misconduct complaints made by females are false.
28

- CSUS's Title IX administrators address sexual misconduct complaints made by female students with the presumption that since (purportedly) nearly one-hundred-percent of all sexual assault and gender-based violence is perpetrated by men, the male accused student must be guilty.

- CSUS's Title IX administrators are taught to "believe the victim" and not to question allegations made by female complainants.

- CSUS conducted no formal evidentiary hearing before the investigator made factual findings and determinations as to John Doe's responsibility.

- John Doe did not receive all the evidence during the Title IX investigation.

- John Doe was not provided with a live hearing where credibility determinations could be made and John Doe could question his accuser.

158.    Importantly, Defendant CSU's decision to expel Doe was unreasonable based on the evidence, as the sanctions were disproportionate to the findings.

159.    The United States Department of Education's Office for Civil Rights acknowledged that using a different procedure for sexual harassment issues as opposed to other disciplinary issues (as was done in this matter with the University placing the burden of proof on Doe), "suggests a discriminatory purpose and should be avoided." (https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf)

160.    Defendant CSU engaged in deliberate indifference in refusing to correct the erroneous findings and the harsh and disproportionate discipline placed on John Doe.

161.    Defendants CSU conduct, as detailed above, involved arbitrary and capricious violations of John Doe's Constitutional Due Process Rights.

162.    Upon information and belief, Defendant CSU possesses additional communications, documents, and recordings evidencing Defendant's deliberate indifference in imposing unlawful and erroneous discipline on John Doe on the basis of his gender.

163.    This unlawful discrimination in violation of Title IX proximately caused Plaintiff to suffer substantial injury, damage, and loss including, but not limited to, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries, counsel fees, court costs, and other direct and consequential damages.

164.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

165.    The Title IX selective enforcement theory asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or decision to initiate the proceeding was affected by the student's gender.

166.    Selective enforcement is proven by a showing that a similarly situated member of the opposite sex was treated more favorably due to her gender.

167.    As detailed herein, CSU violated Title IX's prohibition against selectively enforcing its policies on the basis of gender.

168.    Specifically, CSU expelled the male respondent based on the female complainant's allegations when it was later determined that her claims were not supported by a preponderance of evidence.

169.    Defendant CSU intentionally discriminated against Plaintiff because he is a male when it permitted a single investigator, who was obviously biased, to act as investigator, judge, jury and executioner, and imposed a "grossly disproportionate" and an excessively harsh and punitive sanction of expulsion.

170.    Furthermore, Doe was treated differently than similarly situated females in that "penile vaginal penetration" was considered to be "rape or acquaintance rape under EO 1097 (aggravating factor)" for which no mitigating factors could be considered and as such, the only possible sanction was expulsion – a complete loss of all of his rights to education along with a permanent mark on his record indicating a Title IX violation.

171.    Based on the foregoing, the actions taken and decisions made by Defendant CSU in carrying out the Title IX investigation and adjudication process were informed by Plaintiff's gender, without regard to guilt or innocence.

172.    As set forth above, upon information and belief, Defendant has information which will show that females are found responsible less often than males.

173.    As set forth above, the University holds in secrecy the data to prove that its selective enforcement begins at the intake of a Title IX Complaint.

174.    Upon information and belief, the University chooses a higher percentage of male respondent cases than female respondent cases to bring to full investigation.

175.    The direction to selectively enforce claims against men flowed from the Chancellor's office, down through the Title IX office and was reflected in the attitude and treatment by each of the decision-makers in this matter.

176.    Upon information and belief, Plaintiff was found responsible and subjected to expulsion because he is a male.

177.    This unlawful discrimination in violation of Title IX proximately caused Plaintiff to suffer substantial injury, damage, and loss including, but not limited to, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries, counsel fees, court costs, and other direct and consequential damages.

178.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### FOURTH CAUSE OF ACTION
### Violation of California Civil Code, § 51
### (Defendant CSU)

179.    John Doe repeats and realleges each and every allegation herein above as if fully set forth herein.

180.    The California Civil Code § 51, also known as the Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

181.    CSUS is a "business establishment" within the meaning of California Civil Code, § 51. Upon information and belief, CSUS maintains physical facilities, employs a significant number of paid faculty and staff, provides an education and academic experience to students, receives applications for admission from the general public, receives tuition payments and fees from its students and is governed by the Trustees of the California State University.

182.    CSUS denied Plaintiff the advantages, facilities, privileges and services afforded to students of CSUS by, among other things: conducting an investigation and adjudication process biased against the male accused; failing to afford John Doe the rights enumerated in its own guidelines and policies; failing to utilize the requisite preponderance of the evidence standard; and assessing a sanction that was disproportionate and unwarranted in light of the circumstances.

183.    CSUS intentionally engaged in the following discriminatory acts or practices against John Doe as the male accused: CSUS subjected John Doe to disciplinary action in an arbitrary and capricious way, deprived him of due process, and discriminated against him on the basis of his male sex.

184.    Based on the foregoing facts and circumstances, CSUS engaged in unlawful discriminatory practices in violation of California Civil Code, § 51.

185.    As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries, counsel fees, court costs, and other direct and consequential damages.

186.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## FIFTH CAUSE OF ACTION
### Negligence
### (Defendant CSU)

187.    Plaintiff repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

188.    In order to state a negligence claim under California law, a plaintiff must show that the defendant owed the plaintiff a duty, defendant breached that duty, and such breach was the proximate cause of plaintiff's damages.

189.    California courts have recognized the "special relationship" that exists between a university and its students, which gives rise to a duty of care "while they are engaged in activities that are part of the school's curriculum or closely related to its delivery of educational services. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 624-625.)

190. Here, Defendant CSU formed a university-student relationship with Plaintiff and owed him a duty to conduct the disciplinary process with due care, to perform an investigation free from bias or conflict, and to ensure proper training to those responsible for investigating and adjudicating the alleged policy violations.

191. Such duties arise from CSU's relationship with Plaintiff, as a student of the University, an obligation acknowledged by CSU's policies.

192. The foregoing duties were breached when Plaintiff did not receive the full protections of the disciplinary process, and when he was subjected to biased, defective and flawed procedures and an improper decision unsupported by evidence.

193. Plaintiff suffered injuries as a direct result of Defendant's breach of the duties owed to him as a student of CSU, including loss of educational and career opportunities, economic losses, emotional and reputational damages.

194. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. On the First Cause of Action for Breach of Contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

2. On the Second Cause of Action for Promissory Estoppel, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

3. On the Third Cause of Action for Violation of Title IX, a judgment awarding Plaintiff damages

1   in an amount to be determined at trial, including, without limitation, damages to physical well-being,

2   emotional and psychological damages, damages to reputation, past and future economic losses, loss of

3   educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees,

4   expenses, costs and disbursements;

5       4.   On the Fourth Cause of Action for violation of California Civil Code, § 51, a judgment awarding

6   John Doe damages in an amount to be determined at trial, including, without limitation, damages to

7   physical well-being, emotional and psychological damages, damages to reputation, past and future

8   economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment

9   interest, attorneys' fees, expenses, costs and disbursements;

10      5.   On the Fifth Cause of Action for Negligence, a judgment awarding Plaintiff damages in an

11  amount to be determined at trial, including, without limitation, damages to physical well-being,

12  emotional and psychological damages, damages to reputation, past and future economic losses, loss of

13  educational and career opportunities, and loss of future career prospects, plus prejudgment interest,

14  attorneys' fees, expenses, costs and disbursements;

15      6.   For reasonable attorney's fees incurred by Plaintiff as permitted by statute or contract;

16      7.   For costs of suit incurred by Plaintiff; and

17      8.   For such other and further relief as the court deems proper.

18

19                                      HATHAWAY PARKER

20  Dated: July 12, 2021           By:   _____.

21                                      MARK M. HATHAWAY
                                        JENNA E. PARKER
22                                      Attorneys for Plaintiff

23

24

25

26

27

28

1

## JURY DEMAND

2

Plaintiff John Doe herein demands a trial by jury of all triable issues in the present matter.

3

4                                              HATHAWAY PARKER

5      Dated: July 12, 2021                 By: _____

6                                              MARK M. HATHAWAY
                                               JENNA E. PARKER
7                                              Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT FOR DAMAGES
29

# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
CALIFORNIA STATE UNIVERSITY, a public university system and DOES 1 to
20 inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN DOE, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court
111 N. Hill Street
111 N. Hill Street
Los Angeles 90012
Stanley Mosk Courthouse

**CASE NUMBER:**
*(Número del Caso):*
21STCV25518

Sherri R. Carter Executive Officer / Clerk of Court

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark M. Hathaway 151332 (213) 529-9000 (213) 529-0783
HATHAWAY PARKER
445 S. Figueroa St. 31st Fl. Los Angeles, CA 90071

DATE: 07/12/2021
*(Fecha)*

Clerk, by                 R. Perez                 , Deputy
*(Secretario)*                                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* CALIFORNIA STATE UNIVERSITY
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* CCP 416.50   A PUBLIC ENTITY
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# EXHIBIT C

Electronically FILED by Superior Court of California, County of Los Angeles on 08/19/2021 12:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by X. Soto,Deputy Clerk

1  ARTHUR A. HARTINGER (SBN 121521)
   ahartinger@publiclawgroup.com
2  RYAN MCGINLEY-STEMPEL (SBN 296182)
   rmcginley-stempel@publiclawgroup.com
3  ANASTASIA BONDARCHUK (SBN 309091)
   abondarchuk@publiclawgroup.com
4  RENNE PUBLIC LAW GROUP
   350 Sansome Street, Suite 300
5  San Francisco, California 94104
   Telephone:  (415) 848-7200
6  Facsimile:  (415) 848-7230

7  Attorneys for Defendant
   BOARD OF TRUSTEES OF
8  THE CALIFORNIA STATE UNIVERSITY

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

12

13  JOHN DOE, an individual,                    Case No. 21STCV25518

14              Plaintiff,                      EXEMPT FROM FEES (GOV. CODE § 6103)

15  v.                                          **BOARD OF TRUSTEES OF THE**
                                                **CALIFORNIA STATE UNIVERSITY'S**
16                                              **ANSWER TO PLAINTIFF'S COMPLAINT**
17  CALIFORNIA STATE UNIVERSITY, a public       **FOR DAMAGES**
    university system and DOES 1 to 20 inclusive,
18
                Defendants.                     Complaint Filed:  July 12, 2021
19

20

21          Defendant Board of Trustees of the California State University (erroneously sued as "California

22  State University," and herein referred to as "Defendant") answers the unverified Complaint for Damages

23  of Plaintiff John Doe ("Plaintiff") as follows:

24                              **GENERAL DENIAL**

25          Pursuant to California Code of Civil Procedure section 431.30, subdivision (d), Defendant denies,

26  generally and specifically, conjunctively and disjunctively, each and every and all of the allegations of

27  Plaintiff's Complaint and each paragraph contained therein.  Defendant specifically denies that Plaintiff

28  has been damaged as alleged, or at all, by reason of any act or omission on the part of Defendant, its

RENNE PUBLIC LAW GROUP
Attorneys at Law

agents, servants or employees, and further denies that Plaintiff is entitled to any relief as prayed for in the Complaint whatsoever.

**SEPARATE ADDITIONAL DEFENSES**

Defendant states the following separate defenses to the Complaint without admitting, acknowledging, or assuming that Defendant bears the burden of proof as to any of them. Because the Complaint is stated in conclusory terms and is uncertain, vague and ambiguous, Defendant cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Defendant reserves the right to assert additional defenses if, and to the extent that, Defendant becomes aware that such additional defenses are applicable.

**First Affirmative Defense**

(Statute of Limitations)

The Complaint, and each purported cause of action contained therein, is barred, in whole or in part, to the extent Plaintiff failed to comply with any applicable statutes of limitations.

**Second Affirmative Defense**

(Laches)

The Complaint, and each purported cause of action contained therein, is barred, in whole or in part, by the doctrine of laches.

**Third Affirmative Defense**

(Estoppel)

Plaintiff, through his conduct, acts and omissions, and/or through the conduct, acts and omissions of Plaintiff's agents or representatives, is estopped from recovering any relief under any of the causes of action alleged against Defendant.

**Fourth Affirmative Defense**

(Waiver)

Plaintiff, through his conduct, acts and omissions, and/or through the conduct, acts and omissions of Plaintiff's agents or representatives, has waived any right to relief under any of the causes of action alleged against Defendant.

//

-2-

RENNE PUBLIC LAW GROUP
Attorneys at Law

**Fifth Affirmative Defense**

(Unclean Hands)

Plaintiff, through his conduct, acts and omissions, and/or through the conduct, acts and omissions of Plaintiff's agents or representatives, is barred, in whole or in part, by the doctrine of unclean hands from recovering any relief under any of the causes of action alleged in the Complaint.

**Sixth Affirmative Defense**

(Consent)

The Complaint, and each purported cause of action contained therein, is barred, in whole or in part, by the doctrine of consent.

**Seventh Affirmative Defense**

(Mootness)

The Complaint, and each purported cause of action contained therein, in whole or in part, fails to state a claim upon which relief can be granted because the claims are moot.

**Eighth Affirmative Defense**

(No Damages)

Plaintiff has suffered no legally cognizable damages caused by any conduct of the Defendant.

**Ninth Affirmative Defense**

(Failure to State a Cause of Action)

The Complaint, and each purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant.

**Tenth Affirmative Defense**

(Unilateral and/or Mutual Mistake of Fact)

Plaintiff is barred from recovery, in whole or in part, under the doctrine of unilateral and/or mutual mistake of fact.

**Eleventh Affirmative Defense**

(Failure to Exhaust)

Plaintiff is barred from recovery, in whole or in part, by failing to exhaust his administrative, judicial, and contractual remedies.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-3-

1

**Twelfth Affirmative Defense**

2

(Government Claims Act)

3       Plaintiff is barred from recovery, in whole or in part, to the extent Plaintiff failed to comply with

4   the claims presentation requirements of the California Government Claims Act, including, but not limited

5   to, the provisions of California Government Code sections 905, 945.4 and 911.2.

6

**Thirteenth Affirmative Defense**

7

(Immunity)

8       Plaintiff's Complaint, and each pending cause of action therein, is barred because Defendant and

9   its employees are immune from liability pursuant to the Government Claims Act, Government Code

10  sections 815, 815.2, 818, 818.2, 818.8, 820.2, 820.4, 820.6, 820.8, 821.2, 821.6, and 822.2, *et seq*.

11

**Fourteenth Affirmative Defense**

12

(Failure to Join Necessary Parties)

13      Plaintiff has failed to join a party or parties necessary to this action whose interests are impacted

14  by the claims alleged in the Complaint and the requested relief, and has further omitted to state any

15  reasons for such failure.

16

**Fifteenth Affirmative Defense**

17

(Discretionary Authority)

18      Plaintiff is not entitled to the relief requested on the ground that it requests the Court to compel

19  Defendant to exercise discretionary authority in a particular manner.

20

**Sixteenth Affirmative Defense**

21

(Justification and Privilege)

22      Defendant alleges that its conduct was justified and privileged in taking the actions that Plaintiff

23  is now challenging.

24

**Seventeenth Affirmative Defense**

25

(Acts in Accordance with Law and Substantial Evidence)

26      Defendant did not act arbitrarily, capriciously, or wholly without evidentiary support; did not

27  abuse its discretion; and made all required findings, which supported all challenged actions and were

28  supported by substantial evidence.

RENNE PUBLIC LAW GROUP
Attorneys at Law

-4-

RENNE PUBLIC LAW GROUP
Attorneys at Law

### Eighteenth Affirmative Defense

(Statutory Compliance)

Plaintiff is not entitled to the relief requested on the ground that Defendant at all times acted in accordance with the applicable laws and statutes.

### Nineteenth Affirmative Defense

(Good Faith)

Plaintiff is not entitled to the relief requested on the ground that Defendant at all times acted in good faith.

### Twentieth Affirmative Defense

(Ratification)

Plaintiff's claims are barred, in whole or in part, by Plaintiff's and/or Plaintiff's agents or representatives' participation in, approval of or ratification of the conduct upon which the claims are based.

### Twenty-First Affirmative Defense

(Justiciability)

The Complaint, and each purported cause of action therein, whether singularly or in any combination, fails to state a justiciable claim.

### Twenty-Second Affirmative Defense

(Collateral Source)

To the extent Plaintiff is entitled to any recovery, said recovery must be reduced by the amounts Plaintiff has received from any collateral source, and Defendant is entitled to set off such amounts and is also entitled to reimbursement pursuant to Government Code section 985.

### Twenty-Third Affirmative Defense

(After Acquired Evidence)

If Plaintiff was entitled to recover for any loss suffered or sustained at the times alleged, although such is not admitted hereby or herein, then the total amount of damage to which Plaintiff would otherwise be entitled shall be limited in whole or part by the doctrine of after-acquired evidence.

//

-5-

**Twenty-Fourth Affirmative Defense**

(Avoidable Consequences Doctrine)

Plaintiff's damages against Defendant are barred and/or should be reduced under the avoidable consequences doctrine. *See State Dept. of Health Services v. Superior Court*, 31 Cal. 4th 1027 (2003).

**Twenty-Fifth Affirmative Defense**

(Comparative Fault)

Plaintiff's injuries and damages, if any, were proximately caused, in whole or in part, by the negligence and fault of Plaintiff, or by others whose conduct is imputable to Plaintiff, and the recovery of Plaintiff, if any, is diminished by the proportion of such negligence and fault.

**Twenty-Sixth Affirmative Defense**

(Failure to Mitigate)

Plaintiff is barred from recovery due to the failure to mitigate his damages.

**Twenty-Seventh Affirmative Defense**

(Speculative Damages)

Plaintiff's damages against Defendant, if any, are barred and/or should be reduced as they are entirely speculative.

**Twenty-Eighth Affirmative Defense**

(Respondeat Superior)

Defendant is not, by way of principles of *respondeat superior* or otherwise, vicariously liable for any act or omission of any person.

**Twenty-Ninth Affirmative Defense**

(No Attorney Fees)

The Complaint and each cause of action fail to state facts upon which an award of attorney's fees can be granted.

**Thirtieth Affirmative Defense**

(Legitimate Business Interests – Unruh Act)

Plaintiff's claims are barred, in whole or in part, because all of Defendant's actions were motivated by legitimate business interests, including, but not limited to, complying with legal requirements and

-6-

RENNE PUBLIC LAW GROUP
Attorneys at Law

maintaining order.

### Thirty-First Affirmative Defense

(Public Policy – Unruh Act)

The Complaint is barred to the extent that a public policy expressed by statute generally constitutes a reasonable basis for drawing distinctions on the basis of classifications otherwise protected by the Unruh Act.

### Thirty-Second Affirmative Defense

(Litigation/Official Proceedings Privilege)

The Complaint is barred, in whole or in part, because Defendant's conduct was privileged under Civil Code section 47.

### Thirty-Third Affirmative Defense

(Further Affirmative Defenses Reserved)

Defendant presently has insufficient knowledge or information on which to form a belief as to whether it may have additional affirmative defenses that cannot be articulated at this time. Defendant reserves its right to assert, and hereby gives notice that it intends to rely upon, any other defense that may become available.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays as follows:

1.      That judgment be entered in favor of Defendant and against Plaintiff on the Complaint as a whole, and that Plaintiff take nothing by way of the Complaint;

2.      That the Complaint, and each cause of action therein, be dismissed with prejudice;

3.      That Defendant be awarded the costs, expenses and attorney's fees incurred in this action, including, but not limited to, those costs contemplated by Government Code section 6103 *et seq*., Code of Civil Procedure section 1032 *et seq*; and

//

//

//

-7-

RENNE PUBLIC LAW GROUP
Attorneys at Law

4.      That the court grant such additional relief as it deems proper.


Dated:  August 19, 2021                              RENNE PUBLIC LAW GROUP


                                                     By: _____
                                                         ARTHUR A. HARTINGER

                                                     Attorneys for Defendant
                                                     BOARD OF TRUSTEES OF
                                                     THE CALIFORNIA STATE UNIVERSITY

## PROOF OF SERVICE

I, the undersigned, am employed by RENNE PUBLIC LAW GROUP. My business address is 350 Sansome Street, Suite 300, San Francisco, California 94104. I am readily familiar with the business practices of this office. I am over the age of 18 and not a party to this action.

On August 19, 2021, I served the following document(s):

**BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

by the following method(s):

☒ **United States Mail**. I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses on the attached Service List and deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

## SERVICE LIST

| | |
|---|---|
| Mark M. Hathaway<br>Jenna E. Parker<br>HATHAWAY PARKER<br>445 S. Figueroa Street, 31st Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 529-9000<br>Facsimile:  (213) 529-0783<br>Email: mark@hathawayparker.com<br>Email: jenna@hathawayparker.com<br><br>*Attorneys for Plaintiff*<br>JOHN DOE | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 19, 2021, at Dublin, California.

_____
Bobette M. Tolmer

RENNE PUBLIC LAW GROUP
Attorneys at Law

# EXHIBIT D

Electronically FILED by Superior Court of California, County of Los Angeles on 07/12/2021 02:02 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

Case 2:21-cv-06768 Document 1 Filed 08/20/21 Page 48 of 66 Page ID #:48

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Mark M. Hathaway 151332<br>Hathaway Parker<br>445 South Figueroa Street, 31st Floor<br>Los Angeles, CA 90071<br>TELEPHONE NO.: 213-529-9000   FAX NO.: 213-529-0783<br>ATTORNEY FOR *(Name):* Petitioner | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: John Doe v. California State University

| CIVIL CASE COVER SHEET<br>☒ **Unlimited** ☐ **Limited**<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br>☐ **Counter** ☐ **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>21STCV25518<br>JUDGE:<br>DEPT: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 12, 2021

Mark M. Hathaway
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36) Other
    Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE:<br>John Doe v. California State University | CASE NUMBER<br>21STCV25518 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4




| SHORT TITLE: | CASE NUMBER |
|---|---|
| John Doe v. California State University | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☒ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4


American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: | CASE NUMBER |
|---|---|
| John Doe v. California State University | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Local Rule 2.3<br>Page 3 of 4


American LegalNet, Inc.<br>www.FormsWorkFlow.com

| SHORT TITLE: | CASE NUMBER |
|---|---|
| John Doe v. California State University | |

**Step 4:** **Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

**REASON:**

☐ 1.  ☒ 2.  ☐ 3.  ☐ 4.  ☒ 5.  ☐ 6.  ☐ 7.  ☐ 8.  ☐ 9.  ☐ 10.  ☐ 11.

ADDRESS:
401 Golden Shore

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Long Beach | CA | 90802 |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the Central District _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: July 12, 2021 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
Mark M. Hathaway

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)

LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 4 of 4



American LegalNet, Inc.
www.FormsWorkFlow.com

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**07/12/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Perez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV25518 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Theresa M. Traber | 47 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 07/13/2021
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Perez _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

07/21/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By: G. Hironaka  Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
John Doe

DEFENDANT:
California State University, a public university system

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
21STCV25518

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 10/18/2021 | Time: 8:30 AM | Dept.: 47 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 07/21/2021

Theresa M. Traber / Judge
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Mark McClellan Hathaway
445 S. Figueroa Street
31st Floor
Los Angeles, CA 90071

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 07/21/2021

By G. Hironaka
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter V@^^

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/21/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ G. Hironaka _____ Deputy |
| PLAINTIFF/PETITIONER:<br>John Doe | |
| DEFENDANT/RESPONDENT:<br>California State University, a public university system | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV25518 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Mark McClellan Hathaway
Hathaway Parker Inc.
445 S. Figueroa Street
31st Floor
Los Angeles, CA  90071

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 07/21/2021                          By:   G. Hironaka _____
                                                        Deputy Clerk

**CERTIFICATE OF MAILING**

Electronically FILED by Superior Court of California, County of Los Angeles on 07/27/2021 02:14 PM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>MARK M. HATHAWAY, ESQ. (CA SBN 151332); JENNA E. PARKER, ESQ. (SBN 303560)<br>**HATHAWAY PARKER**<br>445 S. FIGUEROA STREET, 31ST FLOOR<br>LOS ANGELES, CA 90071<br>TELEPHONE NO.: (213) 529-9000       FAX NO. *(Optional)*: (213) 529-0783<br>E–MAIL ADDRESS *(Optional)*: mark@hathawayparker.com / jnna@hathawayparker.com<br>ATTORNEY FOR *(Name)*: PLAINTIFF | FOR COURT USE ONLY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 N. HILL STREET<br>MAILING ADDRESS: SAME AS ABOVE<br>CITY AND ZIP CODE: LOS ANGELES, CA 90012<br>BRANCH NAME: CENTRAL DISTRISCT - STANLEY MOSK COURTHOUSE | |

| | |
|---|---|
| PLAINTIFF/PETITIONER:  JOHN DOE, an individual<br>DEFENDANT/RESPONDENT:  CALIFORNIA STATE UNIVERSITY, etc.; et al. | CASE NUMBER:<br>**21STCV25518** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>HATPA-0148562.GE |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint for Damages
   c. ☑ Alternative Dispute Resolution (ADR) Information Package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ Other *(specify documents):* NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE; FIRST AMENDED GENERAL ORDER, VOLUNTARY EFFICIENT LITIGATION STIPULATIONS, ORDER PURSUANT TO CCP 1054(a), EXTENDING TIME TO RESPOND BY 30 DAYS WHEN PARTIES AGREE TO EARLY ORGANIZATIONAL MEETING STIPULATION

3. a. Party served *(specify name of party as shown on documents served):*
      CALIFORNIA STATE UNIVERSITY, a public university system

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      WILLIAM HSU, GENERAL COUNSEL

4. Address where the party was served: 401 GOLDEN SHORE, LONG BEACH, CA 90802

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*          (2) at *(time):*
   b. ☑ **by substituted service.** On *(date):* 07/22/2021    at *(time):* 3:21 PM  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      K. PATRICK (African American, Male, Age 60, 6', 220 Lbs., Bald), OFFICER
      (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ.Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        **or** ☑ a declaration of mailing is attached.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: JOHN DOE, an individual | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CALIFORNIA STATE UNIVERSITY, etc.; et al. | 21STCV25518 |

(5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date)*:        (2) from *(city)*:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt and a postage-paid return envelope addressed to me. (Attach completed Notice and Acknowledgement of Receipt).* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☑ On behalf of *(specify)*: CALIFORNIA STATE UNIVERSITY, a public university system
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☑ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7. **Person who served papers**
   a. Name: DEAN M. CARROLL
   b. Address: PO Box 861057, Los Angeles, California 90086
   c. Telephone number: (213) 975-9850
   d. **The fee** for service was: $ 161.32
   e. I am:

   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
       (i) ☐ owner ☐ employee ☑ independent contractor
       (ii) Registration No.: 5980
       (iii) County: LOS ANGELES

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 7/23/2021

DEAN M. CARROLL
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address)

MARK M. HATHAWAY, ESQ (CA SBN 151332), JENNA E. PARKER, ESQ (SBN 303560)  (213) 529-9000
HATHAWAY PARKER
445 S. FIGUEROA STREET, 31ST FLOOR
LOS ANGELES , CA 90071

Attorney(s) for: PETITIONER
Ref: HATPA-0148562.GE

FOR COURT USE ONLY

SUPERIOR COURT FOR THE STATE OF CALIFORNIA FOR THE
COUNTY OF LOS ANGELES          , CENTRAL DISTRISCT - STANLEY MOSK COURTHOUSE

JOHN DOE, an individual
vs. CALIFORNIA STATE UNIVERSITY, etc.; et al.

| PROOF OF MAILING | DATE: | TIME: | DEPT | CASE NUMBER: 21STCV25518 |
|---|---|---|---|---|

**At the time of mailing, I was at least 18 years old and not a party to the action**

1. I mailed the following documents:
SUMMONS; COMPLAINT FOR DAMAGES; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE; NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE; FIRST AMENDED GENERAL ORDER; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; ORDER PURSUANT TO CCP 1054(a), EXTENDING TIME TO RESPOND BY 30 DAYS WHEN PARTIES AGREE TO EARLY ORGANIZATIONAL MEETING STIPULATION

2. (a) Addressed as follows:

CALIFORNIA STATE UNIVERSITY, a public university system c/o WILLIAM HSU
401 GOLDEN SHORE
LONG BEACH, CA 90802

(b) [X] Business   [ ] Residence   [ ] Other

3. On: 07/23/2021

4. Place:  Los Angeles, California

5. Type of mailing:  First Class

6. Person mailing:
ANNA JIMENEZ
EXPRESS NETWORK
P.O. BOX 861057
LOS ANGELES, CALIFORNIA 90086
(213) 975-9850

7. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 07/23/2021

PROOF OF MAILING

Electronically FILED by Superior Court of California, County of Los Angeles on 08/19/2021 01:17 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Lara, Deputy Clerk

**EFS-005-CV**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: 151,332<br>NAME: **Mark M. Hathaway**<br>FIRM NAME: **HATHAWAY PARKER**<br>STREET ADDRESS: **445 S. Figueroa Street, 31st Floor**<br>CITY: **Los Angeles** STATE: **CA** ZIP CODE: **90071**<br>TELEPHONE NO.: **(213) 529-9000** FAX NO.: **(213) 529-0783**<br>E-MAIL ADDRESS: **mark@hathawayparker.com**<br>ATTORNEY FOR (name): **Plaintiff** | FOR COURT USE ONLY |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>STREET ADDRESS: **111 N. Hill Street**<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: **Los Angeles 90012**<br>BRANCH NAME: **Stanley Mosk Courthouse** | |
| Plaintiff/Petitioner: John Doe | CASE NUMBER:<br>**21STCV25518** |
| Defendant/Respondent: California State University | JUDICIAL OFFICER:<br>**Theresa M. Traber** |
| **CONSENT TO ELECTRONIC SERVICE AND NOTICE OF ELECTRONIC SERVICE ADDRESS** | DEPARTMENT:<br>**47** |

1.   ☐   The following party   or   ☒   the attorney for:

   a.   ☒   plaintiff (name): *John Doe*

   b.   ☐   defendant (name):

   c.   ☐   petitioner (name):

   d.   ☐   respondent (name):

   e.   ☐   other (describe):

   consents to electronic service of notices and documents in the above-captioned action.

2.   The electronic service address of the person identified in item 1 is (specify):
   mark@hathawayparker.com
   jenna@hathawayparker.com
   documents@hathawayparker.com

Date: Aug 19, 2021

_____
Mark M. Hathaway
TYPE OR PRINT NAME

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use<br>Judicial Council of California<br>EFS-005-CV [Rev. July 1, 2016]

**CONSENT TO ELECTRONIC SERVICE AND NOTICE OF ELECTRONIC SERVICE ADDRESS**
**(Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251<br>www.courts.ca.gov

**EFS-005-CV**

| CASE NAME: John Doe v. California State University | CASE NUMBER: 21STCV25518 |
|---|---|

(Note: *If you serve* Consent to Electronic Service and Notice of Electronic Service Address *by mail, you should use form POS-030,* Proof of Service by First-Class Mail–Civil, *instead of using this page.)*

## PROOF OF ELECTRONIC SERVICE

### *CONSENT TO ELECTRONIC SERVICE AND NOTICE OF ELECTRONIC SERVICE ADDRESS*

1. I am at least 18 years old.

   a. My residence or business address is *(specify):*
      445 S. Figueroa Street, 31st Floor, Los Angeles, CA 90071

   b. My electronic service address is *(specify):*
      adriana@hathawayparker.com

2. I electronically served a copy of the *Consent to Electronic Service and Notice of Electronic Service Address* as follows:

   a. Name of person served: Arthur Hartinger / Ryan McGinley-Stempel

   b. Electronic service address of person served: ahartinger@publiclawgroup.com / rmcginleystempel@publiclawgroup.com

      On behalf of *(name or names of parties represented, if person served is an attorney):*
      Respondent California State University

   c. On *(date):* Aug 19, 2021

   d. At *(time):* 1:13 pm

   ☐ Electronic service of the *Consent to Electronic Service and Notice of Electronic Service Address* on additional persons is described in an attachment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Aug 19, 2021

Adriana Gutierrez
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

**CONSENT TO ELECTRONIC SERVICE AND NOTICE OF ELECTRONIC SERVICE ADDRESS**
**(Electronic Filing and Service)**